# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 14-1140V
Filed: December 11, 2025

| | |
|---|---|
| RICHARD GREENSLADE,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Special Master Horner |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for petitioner.*
*Debra A. Filteau Begley, U.S. Department of Justice, Washington, DC, for respondent.*

### DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

On November 24, 2014, petitioner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] ("Vaccine Act"). (ECF Nos. 1, 37, 53.) Petitioner alleged that he suffered transverse myelitis as a result of an influenza ("flu") vaccination of November 23, 2011. (ECF No. 1.) The case was extensively litigated and remained pending for close to a decade. Ultimately, on June 28, 2024, a decision was issued denying compensation, and judgment entered dismissing the case on August 1, 2024. (ECF Nos.165, 167.)

Petitioner subsequently filed a motion for an award of attorneys' fees and costs on January 28, 2025. (ECF No. 168.) Petitioner seeks a total of $551,480.20 for attorneys' fees and costs, including $430,388.80 for attorneys' fees and $121,091.40 for

---

[1] Because this document contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services).  **This means the document will be available to anyone with access to the internet.**  In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] Within this decision, all citations to § 300aa will be to the relevant sections of the Vaccine Act at 42 U.S.C. § 300aa-10, *et seq.*

litigation costs, as well as $7.25 in personal costs.  (*Id.* at 1.)  Respondent did not file any response to the motion.  Petitioner was initially represented by different counsel, who was previously awarded $4,574.48 upon departing the case in June of 2015.  (ECF Nos. 23, 26.)

Based on my review of the billing records, both counsel and petitioner's experts have billed at rates that have been previously approved by the Office of Special Masters.[3]  However, two issues are concerning with respect to the overall amount billed.

First, one reason (among several) that this case was prolonged was that petitioner abruptly changed tack just prior to the initially scheduled entitlement hearing.  After this case was reassigned to the undersigned in January of 2020, I set an entitlement hearing for November of 2020.  (ECF No. 104.)  By that time, petitioner had already filed multiple expert reports by neuroimmunologist Lawrence Steinman, M.D.  However, the hearing was cancelled when petitioner introduced a new expert opinion by neurologist Carlo Tornatore, M.D., about a month prior to the scheduled hearing.  (ECF No. 112.)  Additional expert reports were then exchanged, and the hearing was ultimately held in September of 2023.  Although Drs. Steinman and Tornatore did clearly offer different rationales for their respective causal opinions, petitioner has not offered any argument that it was reasonably necessary to introduce Dr. Tornatore's additional opinion and proceed with opinions and testimony by two qualified neurologists.  The way in which this change in expert presentation was handled compounded both attorney and expert time.

With regard to expert costs, "[t]he question is not whether [the expert] expended the numbers of hours claimed, but whether it was necessary or reasonable for him to do so."  *Baker v. Sec'y of Health & Human Servs.*, No. 99-653V, 2005 WL 6122529, at *4 (Fed. Cl. June 21, 2005) (second alteration in original) (quoting *Wasson v. Sec'y of Health & Human Servs.*, No. 90-208V, 1991 WL 135015, at *3 (Fed. Cl. Spec. Mstr. July 5, 1991), *remanded on other grounds*, 24 Cl. Ct. 482 (1991), *aff'd in relevant part*, 988 F.2d 131 (Fed. Cir. 1993)). Counsel have an obligation to monitor expert fees and costs and to incur only those costs that are reasonable.  *Perreira v. Sec'y of Health & Human Servs.*, No. 90-847V, 1992 WL 164436, at *4-5 (Fed. Cl. Spec. Mstr. June 12, 1992) (explaining that "[t]his court has continuously warned counsel of their obligation to monitor expert fees . . . . [A]n unreasonable expert fee is not converted into a reasonable fee simply because it was prepaid."), *mot. for rev. denied*, 27 Fed. Cl. 29

---

[3] *See Smith v. Sec'y of Health & Human Servs.*, No. 18-1460V, 2025 WL 2443527, at *5 (Fed. Cl. Spec. Mstr. July 21, 2025); *Langely v. Sec'y of Health & Human Servs.*, No. 17-837V, 2023 WL 7221461, at *3 (Fed. Cl. Spec. Mstr. Sep. 7, 2023); *J.C. v. Sec'y of Health & Human Servs.*, No. 17-69V, 2025 WL 2449036, at *1 (Fed. Cl. Spec. Mstr. July 30, 2025); *Sparrow v. Sec'y of Health & Human Servs.*, No. 18-295V, 2025 WL 2855371, at *6 (Fed. Cl. Spec. Mstr. Sep. 9, 2025); *Adams v. Sec'y of Health & Human Servs.*, No. 17-1121V, 2025 WL 3083284 (Fed. Cl. Spec. Mstr. Oct. 7, 2025); *Banks v. Sec'y of Health & Human Servs.*, No. 22-1206V, 2025 WL 776410, at *1 (Fed. Cl. Spec. Mstr. Feb. 14, 2025); *Jao v. Sec'y of Health & Human Servs.*, No. 21-2109V, 2025 WL 2955199, at *2 (Fed. Cl. Spec. Mstr. Sep. 18, 2025); *Scott v. Sec'y of Health & Human Servs.*, No. 19-1073V, 2024 WL 4043999, at *4 (Fed. Cl. Spec. Mstr. June 25, 2024); *Moore v. Sec'y of Health & Human Servs.*, No. 18-1317V, 2022 WL 558055, at *2 (Fed. Cl. Spec. Mstr. Jan. 26, 2022); *Terrell v. Sec'y of Health & Human Servs.*, No. 13-334V, 2017 WL 1130947, at * (Fed. Cl. Spec. Mstr. Mar. 2, 2017).

(1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994).  Even if petitioner did find Dr. Tornatore's clinical assessment and/or causal analysis more compelling, that would not automatically justify also continuing to present Dr. Steinman's separate opinion.  *Accord Bartoszek v. Sec'y of Health & Human Servs.*, No. 17-1254V, 2024 WL 5200113, at *3 (Fed. Cl. Spec. Mstr. Nov. 26, 2024) (explaining where Dr. Steinman had been introduced as a second expert that, "while petitioner cannot necessarily be faulted for embracing a previously successful theory, it is also the case that Dr. Gershwin's opinion was never adjudged to be deficient, meaning that Dr. Steinman's opinion cannot be said to have been a necessity.  Moreover, given the circumstances of this case, petitioner should have in any event ensured that Dr. Steinman's participation was targeted . . . ."); *Truett v. Sec'y of Health & Human Servs.*, No. 17-1772V, 2024 WL 795176, at *2 n.3 (Fed. Cl. Spec. Mstr. Jan. 29, 2024) (stating that "the subjective decision to switch experts midstream, whatever the strategic underpinning, comes with associated costs that are not necessarily reasonably chargeable to the Program").

Second, three senior attorneys billing at top rates remained involved in this case (Ms. Durant, Mr. Milmoe, and Mr. MacLeod).  This is unreasonably inefficient at best and duplicative at worst.  As just one example, on June 26, 2023, Mr. MacLeod initially billed 8.5 hours at a rate of $553 per hour, to review respondent's post-hearing brief, conduct legal research, and devise a strategy.  (ECF No. 168-1, p. 40.)  However, he also documented that some portion of that time represented coordination with Mr. Milmoe.  (*Id.*)  Mr. Milmoe in turn billed over 20 hours in July and August 2023, reviewing both the research and the medical evidence, further devising strategy with petitioner's expert, conducting still more legal research, and then ultimately coordinating with Ms. Durant, before the post-hearing reply brief was filed.  (*Id.* at 40-41.)  In the lead up to the hearing, all three attorneys devoted significant time to case review and hearing preparation.  Both Mr. Milmoe and Mr. MacLeod billed for the full hearing, and Ms. Durant billed an additional 2.5 hours to review the resulting transcript.  (*Id.* at 31-38.)  Even accounting for the number of experts involved and the extent to which the issues were contested, this is ultimately excessive.  Special Masters have previously disfavored having multiple attorneys working on the same case and have reduced fees accordingly.  *See, e.g.*, *Austin v. Sec'y of Health & Human Servs.*, No. 10-362V, 2013 WL 659574, at *14 (Fed. Cl. Spec. Mstr. Jan. 31, 2013); *Soto v. Sec'y of Health & Human Servs.*, No. 09-897V, 2011 WL 2269423, at *6 (Fed. Cl. Spec. Mstr. June 7, 2011); *Carcamo v. Sec'y of Health & Human Servs.*, No. 07-483V, 2011 WL 2413345, at *7 (Fed. Cl. Spec. Mstr. May 20, 2011).

It is "well within the special master's discretion" to determine the reasonableness of fees.  *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521-22 (Fed. Cir. 1993); *see also Hines ex rel. Sevier v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991) ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs.").  The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act.  *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347-48 (Fed. Cir. 2008).  This is a two-step process.  *Id.*  First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the

litigation times a reasonable hourly rate.'" *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)).  Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings.  *Id.* at 1348.

      Despite the above issues and the overall high amount requested for attorneys' fees and costs, respondent did not file any response.  Of course, special masters have an independent obligation to assess the reasonableness of attorneys' fees and costs and can reduce a fee request *sua sponte*, without providing petitioners notice and opportunity to respond.  *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009).  However, pursuant to Vaccine Rule 13(a)(3), "[t]he failure of respondent to identify with particularity any objection to a request for attorney's fees and costs may be taken into consideration by the special master in the decision."  Balancing these considerations, I opt to reduce both the total attorneys' fees and total expert costs by 10%, which is a less significant cut than I may have made had the amounts at issue been contested by respondent.  *Accord D.G. v. Sec'y of Health & Human Servs.*, No. 11-577V, 2020 WL 3265015, at *5 n.8 (Fed. Cl. Spec. Mstr. May 22, 2020) (noting respondent's lack of objection regarding attorneys' fees and costs of $630,000.00 and explaining that "[b]ecause I am therefore exercising my discretion *sua sponte*, I choose in light of the facts and circumstances of this case to exercise it more reservedly than I may otherwise have if the reasonableness of the fees and costs were being actively litigated with specific objections at issue"); *see also Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011) (explaining that special masters are not obligated to engage in line-by-line analysis of fee applications).  This results in a reduction of $43,038.88 in attorneys' fees and $9,792.50 in attorneys' costs.

      The Vaccine Act permits an award of reasonable attorneys' fees and costs. § 300aa-15(e).  The undersigned **GRANTS** petitioner's motion and awards attorneys' fees and costs in a reduced amount.

      **Accordingly, the undersigned awards a lump sum of $498,656.07, representing reimbursement of $498,648.82 for attorneys' fees and costs and $7.25 in petitioner's personal costs, to be paid through an ACH deposit to petitioner's counsel of record, Leah V. Durant's IOLTA account for prompt disbursement.**

      The clerk of the court shall enter judgment in accordance herewith.[4]

**IT IS SO ORDERED.**

      **s/Daniel T. Horner**
      Daniel T. Horner
      Special Master

---

[4] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.